# EXHIBIT 4

FILED
2005 NOV 23 PM 12: 52

STATE OF NORTH CAROLINA ) IN THE GENERAL COURT
COUNTY OF MECKLENBURG ) OF JUSTICE
) SUPERIOR COURT DIVISION
) 05-CVS-20213

PARMALAT CAPITAL FINANCE )
LIMITED, acting by its Joint Provisional )
Liquidators, Gordon I. MacRae and G. James )
Cleaver, )
) **COMPLAINT**
Plaintiff, )
)
vs. ) (Jury Trial Demanded)
)
BANK OF AMERICA CORPORATION; )
BANK OF AMERICA NATIONAL TRUST )
& SAVINGS ASSOCIATION; )
BANC OF AMERICA SECURITIES, LLC; )
BANC OF AMERICA SECURITIES, LTD.; )
BANK OF AMERICA INTN'L LTD.; )
and BANK OF AMERICA, N.A., )
)
)
Defendants. )
)

Parmalat Capital Finance Ltd. ("Capital Finance" or "Plaintiff"), acting by its Joint Provisional Liquidators, Gordon I. MacRae and G. James Cleaver, (the "JPLs"), brings this action against the Bank of America defendants identified above ("Bank of America" as defined herein or "Defendants"). The wrongful conduct of the Defendants articulated herein robbed Capital Finance and its creditors of hundreds of millions of dollars.

## I.   INTRODUCTION

1.   The collapse of Italy's Parmalat Finanziaria, Parmalat S.p.A., and certain of their

1

affiliated companies (collectively, "Parmalat")[1] beginning in late 2003 was one of the largest bankruptcies in European history. As the dust from Parmalat's collapse began to settle, it became clear that Parmalat insiders had looted Parmalat and artificially kept it out of bankruptcy through fraudulent financial and accounting schemes that gave the false appearance of financial stability and solvency. Italian authorities have indicted at least eleven of Parmalat's insiders, including Parmalat S.p.A.'s former CEO and CFO, as well as Parmalat's counsel, Gian Paolo Zini, for their abuse of Parmalat, and the Extraordinary Commissioner of Parmalat (broadly the Italian equivalent of a bankruptcy trustee) has brought breach of fiduciary duty, RICO, and other claims against Parmalat insiders for the damage they wrought on Parmalat.

2.   Parmalat's insiders did not perpetrate their fraud alone. Bank of America, acting by and through various of its officers and employees, was at the center of the Parmalat fraudulent activities, and it worked with Parmalat insiders to orchestrate a series of transactions designed to conceal Parmalat's insolvency, while generating millions in fees and interest for Bank of America. Italian prosecutors have brought criminal charges against Bank of America for the role its employees played in these fraudulent schemes.

3.   As described below, Bank of America victimized Capital Finance by aiding and abetting breaches of fiduciary duties owed to Capital Finance by some of its directors, and by conspiring with those wrongdoers to exploit Capital Finance for transaction fees, a source of funds to be abused, and a repository for troubled debt. These Parmalat insiders—with the knowing assistance of Bank of America—were acting exclusively in their own interests and used

---

[1] For the purposes of this Complaint, the defined term "Parmalat" does not refer or otherwise include Capital Finance, a Cayman Islands company currently subject to winding up proceedings before the Grand Court of the Cayman Islands, that was never, and is not now, part of the Parmalat Italian Extraordinary Administration proceedings. Unlike most of the entities that were subject to those Italian proceedings, Capital Finance has many non-Parmalat-related, U.S.-based beneficial owners who paid hundreds of millions of dollars for Capital Finance's preferred stock.

Capital Finance as an instrumentality of their wrongdoing. The transactions at issue here did not, and were never intended to, benefit Capital Finance. Those transactions involved financing arrangements with Parmalat entities in the Cayman Islands, Argentina, Venezuela, Brazil and elsewhere.

4.    At the time that it designed, structured, and executed the transactions discussed herein, Bank of America exerted such a level of control and influence over Capital Finance that it assumed and repeatedly breached fiduciary duties to Capital Finance in undertaking the transactions. Indeed, to the extent it wanted Capital Finance's involvement in a transaction, Bank of America could so design it and make it happen.

5.    Bank of America knowingly assisted certain Parmalat insiders (who also owed fiduciary duties to Capital Finance and its creditors) in structuring and executing transactions and in operating Capital Finance in a manner inconsistent with, and in violation of, those duties. These insiders included, among others, Fausto Tonna and Luciano Del Soldato, both of whom were directors of Capital Finance at all relevant times. Tonna also served as Parmalat's Chief Financial Officer, and Del Soldato as its Chief Administrative Officer. With the knowing and substantial assistance of Bank of America, Tonna and Del Soldato and others breached the duties they owed to Capital Finance and its creditors by pursuing actions that favored their own conflicting interests to the detriment of Capital Finance and its creditors.

6.    Some of Capital Finance's directors, however, were innocent and unaware of the wrongful nature of the matters alleged in this Complaint. Bank of America and certain Parmalat insiders manipulated Capital Finance's business to hide the true state of affairs at Capital Finance as well as the true nature of the transactions discussed herein and their impact upon Capital Finance from these innocent directors. Those innocent directors relied upon Bank of America's

assistance, advice, and conduct, all to Capital Finance's great detriment. The impact of Bank of America's wrongful conduct did not become apparent until, at the earliest, the initiation of Capital Finance's liquidation in December 2003.

7. With respect to Bank of America's involvement in the matters described herein, Bank of America typically assumed no credit risk, no capital risk and no currency risk in its transactions with Capital Finance. The real risk it took was a legal risk inasmuch as Bank of America designed transactions in a manner intended to conceal from regulators, investors, creditors, other innocent Capital Finance stakeholders, and eventually some Capital Finance directors, that the proceeds of such transactions would be and were immediately diverted to: (1) Parmalat for repayment of its debts to Bank of America and others; and/or (2) to culpable Parmalat and/or Bank of America insiders for improper purposes, all while saddling Capital Finance with liabilities to the detriment of its interests as well as the interests of its investors and creditors. When Bank of America did assume any credit risk, it did so only with schemes already in place designed to shift that risk to Capital Finance.

8. Certain of Bank of America's conduct described herein also was willful and wanton. Not only did Bank of America knowingly aid in Capital Finance's looting, certain of its agents and employees were among the looters. As of the date that this complaint is being filed, at least three senior Bank of America officers have been indicted for their part in arranging and carrying out various of the Parmalat-related fraudulent transactions. For example, one of them, Luca Sala ("Sala"), admitted to looting between $21 and $24 million from Capital Finance, in connection with his role as a managing director at Bank of America.

9. In his role as Parmalat's Extraordinary Commissioner in the Italian reorganization proceedings, Dr. Enrico Bondi has alleged claims relating to many of the same transactions

4

described below on behalf of Parmalat in various suits brought in the United States (most of which are now being overseen by the United States District Court for the Southern District of New York in connection with cause number 04 MD 1653 (LAK)). In some of those suits, Parmalat purports to seek damages for losses actually sustained by Capital Finance. Neither the Extraordinary Commissioner nor Parmalat have any legal right to assert Capital Finance's claims or to seek damages on its behalf.

## II.   PARTIES

### A.   The Plaintiff

10.   G. James Cleaver and Gordon I. MacRae ("Cleaver and MacRae") have been duly appointed and empowered as provisional liquidators of Capital Finance by the Grand Court of the Cayman Islands. Capital Finance maintains its registered offices in George Town, Grand Cayman, Cayman Islands.

11.   Capital Finance is a Cayman Islands corporation in liquidation proceedings pursuant to the laws of the Cayman Islands.

12.   On December 24, 2003, a winding up petition was presented to the Grand Court of the Cayman Islands ("Cayman Court"). This petition initiated proceedings roughly equivalent to (but with important differences from) proceedings under Chapter 7 of the Bankruptcy Code in the United States.

13.   On December 24, 2003, the Cayman Court appointed Cleaver and MacRae as Joint Provisional Liquidators of Capital Finance.

14.   The Cayman Court appointed the JPLs following the revelation of a massive fraud involving Parmalat, and perpetrated against, among others, Capital Finance. All culpable Capital Finance insiders (e.g., Parmalat directors Tonna and Del Soldato) resigned either prior to or

5

transactions that generated significant fees and interest for itself while increasing the debt obligations of Capital Finance and plunging Capital Finance into a deepening level of insolvency. Capital Finance received no benefits whatsoever from these transactions.

145. Bank of America continually induced Capital Finance to incur more and more debt in order to fuel Bank of America's continuing demand for fees and interest payments, and to provide capital to certain Parmalat entities so they could repay debts owed to Bank of America. Bank of America knew Capital Finance could not sustain such levels of debt, but deliberately induced Capital Finance to incur it anyway in order to reduce or eliminate Bank of America's exposure to other Parmalat entities as much as possible – before Parmalat's house of cards collapsed.

146. Had Bank of America properly discharged its statutory, contractual, ethical, and other legal duties, it would have been required to notify public authorities, public regulators, and/or Capital Finance's innocent directors, officers and creditors of the true nature of the transactions at issue, and the true nature of Capital Finance's financial affairs.

147. As a direct and proximate result of Bank of America's breach of fiduciary duties, Capital Finance and its creditors were foreseeably injured and damaged in an amount greatly in excess of the jurisdictional limits of this court for which sums Plaintiff now sues.

*Count 2 – Aiding and Abetting Breach of Fiduciary Duty*

148. Plaintiff re-alleges and fully incorporates the allegations pleaded above.

149. Certain Parmalat insiders, including Tonna and Del Soldato, served as directors of Capital Finance and played a key role in structuring and arranging the transactions described above.

150. As directors of Capital Finance, Tonna and Del Soldato, among others, owed a

36

fiduciary duty to act at all times with the utmost good faith and fair dealing and in the best interests of Capital Finance.

151.  As legal counsel to Capital Finance, Gian Paolo Zini participated in the structuring or facilitating of the transactions described above, and similarly owed Capital Finance a fiduciary duty to act at all times with the utmost good faith and fair dealing and in the best interests of Capital Finance.

152.  Moreover, Tonna, Del Soldato, Zini, and others owed fiduciary duties to Capital Finance's creditors at such time as Capital Finance entered the zone of insolvency, which was followed quickly by a state of actual insolvency.

153.  By virtue of the acts and omissions set forth above, the existence of pervasive conflicts of interests, and their numerous breaches of the duty of loyalty to Capital Finance and its creditors, Tonna, Del Soldato, and Zini, among others, collectively and individually breached fiduciary duties owed to Capital Finance and its creditors by directing Capital Finance to enter into the transactions described herein, when fidelity to their fiduciary duties should have compelled them to keep Capital Finance fully advised regarding the true nature of the transactions, and to take actions to prevent it from entering such transactions.

154.  In designing, structuring, and arranging the transactions described above, Bank of America knew of the breaches of fiduciary duty caused by the acts and omissions set forth above, and was an active, integral, and essential participant in the acts and omissions.

155.  At a minimum, Bank of America knowingly gave substantial assistance to Tonna, Del Soldato, and Zini in connection with the acts and omissions set forth above.

156.  The conduct constituting breaches of fiduciary duties owed to Capital Finance and its creditors while in the zone of insolvency was entirely adverse to the interests of, and provided

no benefit to, Capital Finance.

157. Capital Finance had innocent directors and officers who were not involved in the acts and omissions set forth above and were not aware of the breaches of fiduciary duties by Tonna, Del Soldato, and Zini, and were unaware of Bank of America's substantial assistance and participation in such breaches.

158. Capital Finance's innocent directors and officers could and would have terminated and/or prevented the acts and omissions set forth above if they had known and/or understood and appreciated what Tonna, Del Soldato, Zini, and Bank of America actually were doing to Capital Finance as well as the true adverse impact on Capital Finance and its creditors.

159. As a direct, proximate result of the substantial assistance given by Bank of America to Tonna, Del Soldato, and Zini, among others, in connection with the acts and omissions set forth above, Capital Finance and its creditors were injured and damaged in an amount greatly in excess in of the jurisdictional limits of this court, for which Plaintiff now sues.

*Count 3 - Unjust Enrichment*

160. Plaintiff re-alleges and fully incorporates the allegations pleaded above.

161. By virtue of the acts and omissions set forth above, Bank of America received millions of dollars in payments from and at the expense of Capital Finance and its creditors. To the extent that these payments are found not to have arisen from legally enforceable contracts (*e.g.*, they are the product of illicit or otherwise unenforceable contractual obligations), these non-contractual payments, including at least $24 million paid to Bank of America agents or employees, unjustly benefited Bank of America, its agents, or employees, at the expense of Capital Finance and its creditors.

162. Under the circumstances, "equity and good conscience" require that Bank of