UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re PARMALAT SECURITIES LITIGATION | : MASTER DOCKET |
| | : |
| | : 04 MD 1653 (LAK) ECF Case |
| This document relates to:  04 Civ. 0030 (LAK) | : |
| | **Electronically Filed** |

# LEAD PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DR. BONDI'S MOTION FOR A PROTECTIVE ORDER  REGARDING EXPERT WITNESSES

*Of Counsel*:

**SPECTOR ROSEMAN & KODROFF, P.C.**
Robert M. Roseman (RR-1103)
Andrew D. Abramowitz
Daniel J. Mirarchi
Rachel E. Kopp
1818 Market Street, 25th Floor
Philadelphia, PA  19103
215-496-0300

**COHEN, MILSTEIN, HAUSFELD &
  TOLL, P.L.L.C.**
Steven J. Toll
Lisa M. Mezzetti (LM-5105)
Mark S. Willis
Julie Goldsmith Reiser
Joshua S. Devore
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005-3964
202-408-4600

**GRANT & EISENHOFER P.A.**
Stuart M. Grant (SG-8157)
James J. Sabella (JS-5454)
John C. Kairis (JK-2240)
Diane Zilka (DZ-9452)
485 Lexington Avenue
New York, NY  10017
646-722-8500

*Co-Lead Counsel for Plaintiffs*

Dr. Bondi's motion for a protective order regarding four key expert witnesses should be denied. New Parmalat is a defendant in the class action, and Dr. Bondi's motion admits that he intends to use these experts' testimony to defend cross-claims *in the very same action* (the class action) for which Lead Plaintiffs seek to question the four experts. It is inappropriate to prohibit Lead Plaintiffs from participating in depositions of witnesses whose testimony is going to be presented at the trial of the class action, particularly since all discovery in the MDL is being taken on a coordinated basis. In addition, if necessary, Lead Plaintiffs should be permitted to subpoena these witnesses for trial. Granting immunity would undermine judicial administration of the MDL and the litigation in which the experts are testifying.

In their Amended Disclosure of Expert Witnesses (Torell Decl., Exh. A), Lead Plaintiffs carefully differentiated their designations of experts whom they had retained from experts designated by other parties, such as those at issue here. With respect to the latter, given the Court's rulings concerning streamlining the cases, and the topics on which these experts were designated, Lead Plaintiffs stated that they "may use testimony from [these] experts that have been designated by other parties …," and that they "do not intend to offer any testimony from these other experts beyond what is set forth in such experts' reports or that is otherwise part of such experts' deposition testimony adduced in the Parmalat MDL proceedings." This is consistent with the Court's efforts to maintain coordinated discovery, and with allowing full use of experts whose reports and testimony specifically and directly reflect on the class proceedings.

**<u>Lead Plaintiffs Should Be Permitted To Depose And Use Testimony From The Experts</u>**

As this Court noted in *Rubel v. Eli Lilly and Co.*, 160 F.R.D. 458, 459 (S.D.N.Y. 1995) (Kaplan, J.), "[e]xperts enjoy no constitutional or statutory immunity from compulsory process." *Id.* (citation omitted). "Moreover, the desire for all probative information in service of the

overall search for truth *weighs in favor of compelled testimony and, indeed, discovery even from consultative experts*." *Id.* (emphasis added). Thus, Dr. Bondi's unwillingness to have "his" experts' testimony used by other parties should be disregarded.

Notably, the witnesses at issue here are not the typical experts retained by a party in anticipation of litigation. Dr. Bondi's expert designations state that three of the experts (Dr. Chiaruttini and Messrs. Galea and Megna) are testifying regarding reports they prepared *for the Public Prosecutors of Milan or Parma.* Thus, these experts' reports were *not* prepared for Dr. Bondi, and no prejudice would stem from allowing Lead Plaintiffs to use these experts' testimony at trial.[1] Moreover, the expert witnesses here had unique access to prosecutorial documents (which are not available to Lead Plaintiffs) and their work would be prohibitively expensive for plaintiffs to duplicate. Galea and Megna spent at least 3,000 hours and billed about €2 million. (Megna, 146, 218-19) Chiaruttini was paid €700,000 for her work. (Chiaruttini, 434-35) *See Decl. of C. Torell.* The Italian court paid these fees. Thus, Lead Plaintiffs are not seeking to benefit from another party's outlays for those witnesses. Further, Lagro and his PwC team spent approximately 200,000 hours, for a fee in the area of €25-30

---

[1]   In *Rubel*, potential prejudice stemming from the adverse party's initial retention of the expert outweighed the probative value of the expert's testimony, since jurors might assume the opposing party was hiding something. The instant case does not suffer from such prejudice, because three of the experts prepared their reports for public prosecutors. Moreover, any prejudice stemming from Mr. Franco Lagro (the fourth expert)'s retention by the Extraordinary Administration is curable. *See Agron v. Trustees of Columbia Univ. in City of New York*, 176 F.R.D. 445, 449 (S.D.N.Y. 1997) (potential prejudice could be cured by instructing parties to not discuss who initially retained the expert). *Agron* also noted that the court's "truth finding mission" favors the admission of expert testimony, and permitted a defendant to admit the plaintiff's expert's report and testimony. *Id.*

Regarding "non-traditional" experts, *see also Romero v. U.S.*, 153 F.R.D. 649, 653 (D. Colo. 1994), which denied the government/defendant's attempt to prevent the plaintiff from questioning an expert army physician who had treated the plaintiff, noting that the physician was "not the traditional expert witness who may be hired by a party." *Id.* The court further noted "it simply makes no sense that a party would be allowed to determine whom the other side may endorse as a witness." *Id.* at 652.

2

million.  (Lagro, 176-77).  Recreating such efforts would hardly be practical or reasonable.

Moreover, *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 44 (S.D.N.Y. 1997), on which Dr. Bondi relies, indicates that Lead Plaintiffs *should* be permitted to take the deposition of the experts at issue here.  First, in *Bank Brussels*, the expert was only designated as a testifying expert in *a different* case.  By contrast, Dr. Bondi's stated intention to utilize the experts for the Grant Thornton cross-claim in the Class action renders the experts "testifying experts" in the *instant case*.  Second, even though the expert in *Bank Brussels* was non-testifying, the court permitted the expert's deposition to be taken, based on "exceptional circumstances" which were like the circumstances here.  *Bank Brussels* noted that "exceptional circumstances" are commonly demonstrated, *inter alia*, "where it is possible to replicate expert discovery on a contested issue, but the costs would be judicially prohibitive."  *Id.*  The exceptional circumstances in *Bank Brussels* – the accounting expert had a broad mandate and engaged in a lengthy 10,000-hour investigation – are nearly identical to those here.  *Id.*  The lengthy, approximately €30 million investigation by the experts here similarly warrants permitting Lead Plaintiffs to participate in any depositions of these experts and use any deposition testimony.[2]

**Immunity From Process Should Not Apply To The Experts Here**

Although this may not be an issue if Lead Plaintiffs only use these experts' deposition testimony, Dr. Bondi's immunity from process argument should not prevail.  Each of Dr. Bondi's immunity from process cases concerns a witness who entered a jurisdiction to testify in a *different* case from the case for which the witness was then served.  By contrast, the experts

---

[2]  *See also In re Agent Orange Prod. Liab. Litig.*, 105 F.R.D. 577, 581 (S.D.N.Y. 1985) (compelling discovery of experts retained in a companion case which was part of same multidistrict litigation because otherwise plaintiffs would have to devote enormous time and resources to duplicating the experts' efforts).

3

here are entering the U.S. to be deposed for, *inter alia*, the cross-claim in this Class action. Immunity is inappropriate for *the very same case* in which the witnesses are testifying.[3]

The immunity cases on which Dr. Bondi relies also explain that immunity is "not boundless," and that, according to the Supreme Court, immunity "shall be extended or withheld only as judicial necessities require." *American Centennial Ins. Co. v. Handal*, 901 F. Supp. 892, 894-95 (D. N.J. 1995) (case cited by Dr. Bondi) (quoting *Lamb v. Schmitt*, 285 U.S. 222, 225 (1932)). The Supreme Court's test is "whether the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it." *Id.* In other words, immunity should not be granted if immunity "would obstruct justice in the first suit." *Id.* In the instant case, the first suit and the suit for which Lead Plaintiffs seek to subpoena the experts are one and the same. Justice and judicial administration would be obstructed if immunity is granted to the experts here.[4]

**Dr. Bondi's Requested Deposition Time Limits Are Too Short**

Given all defendants' expressed interest in deposing these witnesses and the fact that the experts will testify in Italian, Lead Plaintiffs believe that at least four days of testimony in Italian (equivalent to approximately two days of English testimony) will be necessary for Dr. Chiaruttini and Mr. Lagro, and at least three days for the other experts at issue.

---

[3] For instance, in *Viking Penguin v. Janklow*, 98 F.R.D. 763 (S.D.N.Y. 1983), immunity from process in a New York action was granted to a defendant who attended a deposition (held in New York) for a parallel South Dakota action. *Viking Penguin* also noted that immunity was within the court's discretion because it would not deprive the plaintiff of an opportunity to obtain judicial resolution of the controversy, because the same issues were being litigated in South Dakota. Unlike in *Viking Penguin*, a grant of immunity in the instant case would deprive Lead Plaintiffs of their only opportunity to have the expert testimony of the four experts at issue heard.

[4] *See also In re Parmalat Secs. Litig.*, MDL Transfer Order, No. 1653 (JPML Dec. 9, 2004) (centralization of the litigation in the Southern District of New York will "promote the just and efficient conduct of the litigation," and is necessary to "eliminate duplicative discovery" and "conserve the resources of the parties").

Dated:   June 13, 2007

                    Respectfully submitted,

                    /s/ Lisa M. Mezzetti
                    **COHEN, MILSTEIN, HAUSFELD &**
                      **TOLL, P.L.L.C.**
                    Steven J. Toll
                    Lisa M. Mezzetti (LM-5105)
                    Mark S. Willis
                    Julie Goldsmith Reiser
                    Joshua S. Devore
                    1100 New York Avenue, N.W.
                    Suite 500, West Tower
                    Washington, D.C.  20005
                    Tel: 202-408-4600

| *Of Counsel*: | **GRANT & EISENHOFER P.A.** |
|---|---|
|  | Stuart M. Grant (SG-8157) |
| **SPECTOR ROSEMAN & KODROFF, P.C.** | James J. Sabella (JS-5454) |
| Robert M. Roseman (RR-1103) | John C. Kairis (JK-2240) |
| Andrew D. Abramowitz | Diane Zilka (DZ-9452) |
| Daniel J. Mirarchi | 485 Lexington Avenue |
| Rachel E. Kopp | New York, NY  10017 |
| 1818 Market Street, 25th Floor | Tel: 646-722-8500 |
| Philadelphia, PA  19103 |  |
| Tel: 215-496-0300 | *Co-Lead Counsel for Plaintiffs* |

5